252 S.W.2d 534 (1952)
HATFIELD
v.
THOMPSON.
No. 42861.
Supreme Court of Missouri, Division No. 1.
November 10, 1952.
*536 Thomas J. Cole and Berthold, Jones & Bialson, St. Louis, for appellant.
Bruneau E. Heirich, Chicago, Ill, J. M. Feigenbaum, Robert E. Feigenbaum, St. Louis, for respondent.
HOLLINGSWORTH, Judge.
In this case brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, plaintiff, a freight train conductor in the employ of defendant, recovered a verdict for $40,000 for personal injuries sustained in attempting to board a moving freight train at defendant's station in Wellington,. Missouri. On defendant's motion to set aside the verdict and render judgment for defendant or in the alternative for a new trial, the trial court ordered a conditional remittitur in the sum of $10,000, with which plaintiff complied. Judgment was rendered in favor of plaintiff in the sum of $30,000. Defendant appealed.
The petition alleges that defendant was engaged in interstate commerce and that plaintiff was injured while employed by defendant in furtherance of defendant's business of such commerce and transportation; that, in accordance with a long established custom of plaintiff and other employees, plaintiff, in the course of his employment, undertook to board the rear end of a caboose of an eastbound moving freight, train at Wellington after it had slowed down on signal; that upon taking hold of the grab iron on said cabooes and attempting to board it, the train lurched forward and his right foot sank into a hole in the cinders in the path adjoining the tracks, causing his left foot to miss the step on the caboose. Five specifications of negligence are then set forth as proximate causes of' plaintiff's injuries.
Defendant's answer admits defendant was engaged in interstate commerce at the time and place plaintiff was injured but denies plaintiff was then and there so engaged; admits plaintiff undertook to board, the moving train; denies the custom pleaded *537 by plaintiff is applicable to this case; denies all negligence charged against defendant; alleges negligence on the part of plaintiff both as the contributory and sole cause of his injuries in that he violated a specific safety rule and disobeyed orders; and moves for dismissal of the action on the grounds plaintiff was not acting within the scope of his employment, was not engaged in his master's business, and was a trespasser or mere licensee.
Plaintiff's right to recover was, at the instance of plaintiff, submitted to the jury on only two of the grounds of negligence pleaded in his petition: Instruction No. 1 hypothesized a finding that his right foot sank into a hole on the right of way and that the existence of the hole, if it existed, constituted negligence on the part of defendant. Instruction No. 2 hypothesized a finding of negligent failure of defendant to maintain the right of way at the point involved in this case in a reasonably safe condition, by reason whereof plaintiff's foot slid into a hole. Each of the aforesaid instructions also hypothesized a finding that plaintiff was engaged in furtherance of interstate commerce for defendant. Neither of them required a finding that defendant had actual or constructive knowledge of the hole. Another instruction given in behalf of plaintiff directed a finding that he was engaged in interstate commerce when injured if the jury found that a part of his duty at Wellington was to protect defendant's trains engaged in interstate commerce and upon completion of that work he was required to return to the Jefferson City terminal and that he was subject to and under control of defendant until he returned.
Briefly summarized, defendant's assignments of error are that: (1) plaintiff was not acting within the scope of his employment when injured; (2) his injuries were occasioned by nonobservance of a safety rule known to him; (3) no negligence on the part of defendant was proved; (4) plaintiff's negligence was the sole cause of his injuries; (5) the instructions did not require a finding that defendant had actual or constructive knowledge of the defect alleged by plaintiff; and (6) the judgment is excessive. Determination of the validity of these assignments requires us to state the evidence in the light most favorable to plaintiff.
Plaintiff entered the service of defendant as a brakeman in 1924. He was promoted to the rank of conductor in 1942 and was serving in that capacity when he sustained the injuries out of which this suit arose. His home terminal was Jefferson City, where he also resided. His duties were to handle passenger and freight trains hauling cars in both interstate and intrastate transportation between St. Louis and Kansas City. This required a knowledge of train schedules and "lineups", the time when and places where all trains were expected to be and their meeting points. He worked under the orders and supervision of the train dispatcher.
On the 28th day of July, 1949, he received a message from the train dispatcher to ride westbound freight train No. 71 from Jefferson City to Wellington, from which point he was to pilot a Western Union motorcar over defendant's tracks westwardly about two miles and return it to Wellington. Pursuant to that message he deadheaded to Wellington, arrived there about 5:50, a. m., on July 29, 1949, and entered upon his duties at 7:30, a. m.
Defendant's tracks at Wellington consist of the main line and a passing track. Freight trains engaged in interstate commerce operate thereon. No passenger trains operate at that point. The motorcar used in the operation under plaintiff's supervision and direction on this occasion had a trailer attached thereto. Western Union telegraph poles that had been in use on Western Union's line from Wellington westward for a distance of two miles were loaded on the trailer, brought to Wellington and there unloaded alongside the passing track. Plaintiff's duties were to direct the operation and movements of the motorcar so as to keep it clear of all trains and, if necessary, cause it to be set off the tracks at places provided therefor or placed on the siding.
The work was completed at about 9:30, a. m. It then was plaintiff's duty to call *538 the train dispatcher at Jefferson City for further orders. In compliance therewith, he called the dispatcher from a railroad telephone near the station at Wellington and advised him the work of piloting the motorcar was completed. The dispatcher asked when he was coming home. Plaintiff said he would come home on Train No. 62. The dispatcher told plaintiff to wait until he communicated with the chief dispatcher, and, after so doing, advised plaintiff that the chief dispatcher refused to stop No. 62 for that purpose, that No. 62, a long train carrying perishables, was late, but that he would stop eastbound Train No. 80, which was due to arrive at Wellington in about four hours, and allow plaintiff to board it and deadhead to Jefferson City. Plaintiff told the dispatcher he might get a ride over to Myrick and ride from Myrick to Sedalia and then deadhead from Sedalia to Jefferson City on one of defendant's passenger trains, to which the dispatcher assented, but told plaintiff to keep in touch with him so that he could get a message to the engineer and crew on No. 80 to stop for him if he decided to deadhead on No. 80 from Wellington to Jefferson City.
Plaintiff did not thereafter have any further communication with the dispatcher. He waited on the platform of the station at Wellington for about an hour and fifteen minutes when he saw No. 62 approaching the station from the west. It carried eighty-seven cars and, due to a slow order in effect in that area, was then traveling eighteen or twenty miles an hour. He gave the engineer a signal indicating a desire to board the rear end of the train, which signal the engineer acknowledged by nodding his head and immediately beginning to slow the train. As the engine passed the point on the platform where plaintiff stood waiting to board the caboose, the train had slowed to ten to twelve miles per hour and continued to slow its speed as the caboose approached him. When the caboose came into plaintiff's view, he saw the conductor seated in the cupola of the caboose and held his suitcase up, whereupon the conductor left the cupola and came to the front end of the caboose and took the suitcase from plaintiff as the front end of the caboose passed. Plaintiff then "set" himself by placing his weight on his right foot to board the rear end of the caboose. As he caught the rear grab iron and "gave a little jump" to get on the caboose, the cinders and gravel under his right foot gave way, the train lurched, his right foot slid into a hole four or five inches in depth, causing the upper part of his left foot as he raised it toward the caboose steps to strike under the bottom step, his hands were jerked loose from the grab iron, and he was thrown to the ground and injured.
As he stood on the platform prior to attempting to board No. 62, he saw no hole in the platform and did not know anything about a hole being there except from the fact that his foot sank into it. He attributed his fall to the hole, rather than the forward lurch of the train.
The testimony of the crew in charge of Train No. 62 as to the manner in which the train was slowed for plaintiff to board the caboose and his attempt to board it and being thrown from it was substantially in accord with that of plaintiff, except they said the train did not lurch and they never saw nor had any knowledge of the hole.
Clarence Culp, defendant's station agent at Wellington, testified by deposition in behalf of plaintiff: An extra gang was then engaged in resurfacing and ballasting at Wellington, scattering chat and pushing and tamping it under the ties. This gang had completed its work in front of the station on the day before plaintiff was injured. The station is south of the tracks. A platform, composed of cinders and chat, extends from the station to the ends of the ties. There is no retaining wall between the platform and the ties. He witnessed plaintiff's effort to board No. 62, but did not know what caused him to fall. The surfacing of the platform was a little rough and uneven where the ballasting had been done and new chat had been applied the day before plaintiff was injured, but the platform had no holes in it. There was a hole "from the digging out around the tie" that extended along the south end of the tie and around the tie toward the *539 rail where plaintiff fell. The ties extend eight inches beyond the rails. The hole, possibly as wide as two hand widths, was at the end of the tie. It appeared to be "right under" the step of the caboose at the point where plaintiff attempted to board it.
Plaintiff and the conductor, engineer, fireman and two brakemen on No. 62 testified it was a general practice and custom of many years standing for railroad employees to board moving freight trains to go from one point to another, and for train crews to slow the trains for them to do so when signaled as the plaintiff signaled in this instance, and that they had never been investigated, criticized or received any demerit for so doing. The fireman and engineer said that in so doing they were acting on their own initiative and contrary to rules. Their testimony also was that the manner in which plaintiff attempted to board No. 62 was the usual and customary manner in which experienced trainmen boarded moving trains and that an experienced trainman could safely board moving trains going at the rate of speed at which No. 62 was proceeding when plaintiff made the attempt.
Plaintiff was paid on a mileage basis from Jefferson City to Wellington, on an hourly basis for his work on the motorcar, and would have been paid on a "deadhead" basis for his return to the Jefferson City terminal had he completed the trip. He was subject to orders during his entire trip and could have been called into service at any time during his return to Jefferson City.
During the cross examination of plaintiff, defendant's counsel read to him Rule 804 of the Uniform Code of Operating Rules, as follows: "Unless freight trains are regularly designated to carry passengers no person must be permitted to ride thereon, except by proper authority." Plaintiff testified the rule applied to passengers and not to employees. Further details of the evidence will be stated as necessary.
Under the pleadings and evidence in this case the burden was upon plaintiff to prove that at the time he was injured a part of his duties were in furtherance of interstate commerce or that such duties in some way directly or closely and substantially affected such commerce. 45 U.S.C.A. § 51, as amended in 1939. It was not necessary for him to show that he was engaged in the movement of an interstate shipment of freight at the moment of injury. Kach v. Monessen S. W. Ry. Co., 3 Cir., 151 F.2d 400, 402; Griffith v. Gardner, 358 Mo. 859, 870, 217 S.W.2d 519, 524. It was only necessary for him to show that a part of the duties of the particular mission or continuous operation to which he was assigned on that mission was in furtherance of defendant's interstate commerce. Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 1221-1222, 181 S.W.2d 536, 538-539, and cases therein cited.
It is not contended that the mission on which plaintiff was sent was not in furtherance of interstate commerce. A part of his duties in piloting the motorcar was to keep it clear of all of defendant's trains operating within the same area, including those carrying goods in interstate transportation. Defendant does contend, however, that when plaintiff completed the work of piloting the motorcar, returned to the station at Wellington and advised the dispatcher to that effect, and the dispatcher advised him Train No. 62 would not be stopped for him but No. 80 would stop for him at Wellington, and he then attempted to board No. 62, he was no longer engaged in furthering the business of defendant. In support of that contention, defendant cites: Quirk v. New York, C. & St. L. R. Co., 7 Cir., 1951, 189 F.2d 97; Bell v. Terminal Railroad Ass'n, 322 Mo. 886, 18 S.W.2d 40; Erie Railroad Co. v. Welsh, 242 U.S. 303, 37 S.Ct. 116, 61 L.Ed. 319. The last two cases were decided prior to the liberalizing and broadening amendment of 1939 to the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and are not controlling under the facts in this case. See Taylor v. Lumaghi Coal Co., and Griffith v. Gardner, both supra.
In the Quirk case, supra, plaintiff's decedent, a supervising foreman in the employ of defendant, had headquarters at Tipton, *540 but lived at Sharpsville. Several days prior to his injury, he had been assigned to and engaged in supervising a work train and three gangs of men at Muncie, the completion of which required several more days. "Decedent had instructions from his superior to stay with the work train. His duty required his presence so as to get the train out in the morning and put it away at night." 189 F.2d 98. Without the consent or knowledge of defendant he left his work at Muncie to return to his home in Sharpsville. He rode from Muncie to Tipton as a guest in the automobile of a friend. At Tipton he took a railroad motorcar of his employer and as he drove it on defendant's tracks toward his home in Sharpsville he was fatally injured in a collision with another motorcar of defendant. The facts in that case readily distinguish it from the facts in this case. There the plaintiff's decedent not only had not completed the work to which he was assigned and which required his presence in Muncie, but he left the job in violation of orders. Furthermore, he was enroute not to his home terminal in Tipton, but had gone beyond Tipton and was enroute to his home in Sharpsville on a personal mission when injured.
When plaintiff had completed his task of piloting the motorcar, it was his duty to return to Jefferson City unless otherwise directed by the dispatcher. The dispatcher did not otherwise direct him, but expressly consented that he do so. Had he completed the mission, he would have been paid for his services from the time he left Jefferson City until he returned. True, the dispatcher told him that Train No. 62 would not be stopped for him, but it does not follow that he left his employment, that is, his duty to complete his mission by returning to Jefferson City, when he attempted to board No. 62 instead of No. 80. He was still in the act of completing the mission on which he had been sent, although in so doing he attempted to board a train other than the one designated by the dispatcher. We hold that plaintiff was engaged in the furtherance of his employer's interstate commerce business when he was injured. See Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 1221-1222, 181 S.W.2d 536, 538-539, and cases therein cited; Griffith v. Gardner, 358 Mo. 859, 870, 217 S.W.2d 519, 523-524, and cases therein cited; Milburn v. Chicago, M., St. P. & P. R. Co., 331 Mo. 1171, 1184, 56 S.W.2d 80, 85; Erie Railroad Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057; Sassaman v. Pennsylvania R. Co., 3 Cir., 144 F.2d 950, 953.
Defendant next insists there is no liability for any failure to furnish an employee a reasonably safe place to work where it is shown that his injuries were caused by his nonobservance of a safety rule published by the railroad and known to him. With certain exceptions hereinafter noted, that is the law. Ottley v. St. Louis-San Francisco Ry. Co., 360 Mo. 1189, 1198, 232 S.W.2d 966, 973; Goslin v. Kurn, 351 Mo. 395, 407, 173 S.W.2d 79, 86. The answer pleads a violation of Safety Rule No. 209, which, the answer says, reads: "Employees must not get on or off moving engines or cars except at a safe speed." This rule, if it existed, was not placed in evidence and is not relied upon by defendant in this court. The only published (in the sense of being written and distributed to employees) rule introduced in evidence and relied upon by defendant here is Rule 804 of the Uniform Code of Operating Rules, which, as stated, provides: "Unless freight trains are regularly designated to carry passengers no person must be permitted to ride thereon, except by proper authority." Upon its face it is an operating rule as distinguished from a safety rule. It is clear, we think, that its purpose is not to promote the safety of employees but to prohibit the crews of such freight trains from permitting other persons to ride thereon. It does not refer to the subject matter of boarding trains. In any event, however, it was the crew of Train No. 62, not plaintiff, that violated the injunction against permitting any person to ride thereon.
In behalf of defendant, Mr. Hopkins, defendant's division trainmaster, testified there was no rule applying to employees getting on and off moving trains other than the rules in the Operating Code; that they board trains "off and on" when *541 they are on duty; and that in the ordinary movement of trains there was no rule to keep them from doing so if they were members of the crew, but if not members of the crew they were not "supposed" to board such a train. Mr. Butler, defendant's dispatcher, testified that trainmen had "no discretion" as to what train they would ride in returning to their home terminals. This evidence does not establish a promulgated and published rule of which plaintiff would be chargeable with knowledge. And there is no evidence he had actual knowledge either that he was not "supposed" to board a moving train because he was not a member of the crew or because he had no discretion as to what train he would ride in returning to his terminal. But, if we should assume that plaintiff knew or was chargeable with such knowledge, yet the evidence is clear and undisputed that it was the long established custom of defendant's employees to board any train, moving or stopped, that was available for return to their terminals. Defendant does not deny such a custom or its knowledge thereof. It merely pleaded that it was not "applicable in the instant case". Proof of the existence of such a custom for the long period of years shown by the evidence in this case is sufficient to charge defendant with knowledge thereof and preclude a defense based thereon. Finnegan v. Missouri Pac. Ry. Co., 261 Mo. 481, 504, 169 S.W. 969, 974, 35 Am.Jur., Master and Servant, § 407, p. 829. This doctrine is recognized in the cases cited by defendant. Ottley v. St. Louis-San Francisco Ry. Co., 360 Mo. 1189, 1197, 232 S.W.2d 966, 972; Lasagna v. Mc-Carthy, 111 Utah 269, 177 P.2d 734; Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79.
Defendant's next contention is that plaintiff did not make a submissible case on the negligence pleaded in his petition. It is insisted (a) that plaintiff had the burden of proving that there was a hole in the station platform and defendant had actual or constructive knowledge thereof, and that plaintiff's version of the manner in which he was caused to fall is contrary to known physical law; (b) that defendant is not liable if his injuries were caused by ballast giving away as he attempted to board the moving train; and (c) that defendant owed plaintiff no duty to keep the space between the ties filled.
Plaintiff expressly disclaims any right to recover by reason of ballast giving away or failure to keep the space between the ties filled. He bases his right to recovery upon the evidence tending to show that a hole five or six inches in depth extended two hand widths, about eight inches, beyond the end of the ties southward toward the station and "right under the step of the caboose", that as he attempted to spring from his right foot to board the train the cinders and gravel gave way under his foot and his foot went into the hole, and that the hole had been left there by defendant's workmen on the day before plaintiff was injured.
Plaintiff did testify that the cinders and gravel gave way under his foot, but he further stated "and my foot went into a hole", and he attributed his injuries to the latter. Thus, he says, in effect, that the hole was the direct causation of his injuries and the giving away of the ballast adjacent thereto was but one of a series of incidents bringing his foot into the hole. It is also true that plaintiff's witness, Culp, testified that the "platform" had no holes in it, yet he did testify that the hole extended eight inches south of the ends of the ties. There was no retaining wall between the "platform" and the ties. A picture introduced in evidence by defendant shows no line of demarcation or break in the chat composing the platform between the station and the end of the ties. Neither does the testimony of this witness that the hole appeared to be "right under" the step of the caboose necessarily render plaintiff's version of the manner in which he fell contrary to physical law, as contended by defendant. The picture above referred to shows the end of the ties practically to coincide with both the outer edge of the caboose steps and the overhang of the train. A hole that extended eight inches south of the end of the ties would either extend outward beyond the overhang or be so near it that a slide of plaintiff's right foot for only a few inches would bring it into the hole. Whether the hole was technically on the "platform" or *542 beyond it is beside the question if it was at a point in front of the south end of the ties and in such proximity to the caboose steps that his foot slid into it as he attempted to board the caboose from a position on the platform (or area generally in use as a platform) such as one ordinarily would take in so doing.
In determining whether a submissible case was made under the Federal Employers' Liability Act, we must follow the Federal decisions. These cases hold it is only when there is a complete absence of facts to support the conclusion reached by the jury that reversible error appears. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916. Upon the whole record, we are convinced that a submissible case was made. See Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S.W. 2d 690, 696; Goslin v. Kurn, 351 Mo. 395, 175 S.W.2d 79, 84.
Defendant's next assignment is that "if plaintiff had obeyed his orders and the safety rules * * * and waited for train No. 80 he would not have been injured * * *. His own negligence was the sole cause of his injuries." We have hereinabove determined the issue made on the safety rules. This leaves only the issue as to disobedience of orders. Neither of the parties has cited us to any authority on this question. We have concluded, however, that defendant's contention is without merit. Assuming the evidence justifies the conclusion that the dispatcher in effect ordered plaintiff not to board Train No. 62, yet it was not an order made with respect to plaintiff's safety, but solely to expedite defendant's business; and mere disobedience of the order, without showing of direct causal connection with his injuries, does not constitute a proximate cause thereof. Labatt's Master and Servant, Vol. 3, Sec. 1279, p. 3578. The fact that he attempted to board No. 62 without authority to do so instead of No. 80, which he was authorized to board, was not a proximate cause of his being injured. It provided, at most, an opportunity for the alleged negligence of defendant to become operative. 65 C.J.S., Negligence, § 104, p. 653.
Neither of the instructions submitting plaintiff's case required the jury to find that defendant had actual or constructive knowledge of the existence of the hole into which plaintiff's foot allegedly slid. Such knowledge, actual or constructive, is unquestionably a prerequisite of defendant's liability. Thompson v. Thompson, Mo.Sup., 240 S.W.2d 137, and cases therein cited; Winslow v. Missouri, K & T. Ry. Co., Mo.App., 192 S.W. 121, 124-125.
Defendant denied both that the hole existed and that it had knowledge thereof. The hole was not of such dimensions or characteristics as to charge defendant with knowledge thereof, such as would be shown in cases involving old, eroded holes, gullies and ditches, or worn and splintered floors and steps, which of themselves bespeak long existence. To the contrary, it is admitted that this hole had existed only since the day before plaintiff was injured, and plaintiff does not contend its existence for that length of time would charge defendant with knowledge. His only contention is that the testimony of his witness, Culp, showing it was left there by defendant's workmen on the day before, was in and of itself sufficient to charge defendant with constructive knowledge, citing Milzark v. National Biscuit Co., Mo.App., 259 S.W. 832, 835; Mattingly v. Broderick, 225 Mo.App. 377, 36 S.W.2d 415; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S.W.2d 690, 696. These cases so hold and are the basis of our holding herein that plaintiff made a submissible case on that issue. But, merely that there was evidence to support such a finding does not establish that the jury found the fact so to be.
In a written statement made by plaintiff shortly after he was injured he made no reference to the existence of the hole, but attributed his fall to "the ballast or gravel giving away under my foot". We have carefully read Culp's testimony and it does not show that Culp had any knowledge of the hole prior to plaintiff's fall. In response to the leading question, "Now, you said that at the place he fell there was a hole from the digging out around the tie, is that correct?" he answered, "Yes, sir." *543 We have searched the deposition in vain for any statement that he had priorly testified to that effect. But, assuming that his testimony was intended to be a factual statement rather than a conclusion, yet the jury consistently could have returned the verdict it did without so finding, for the simple reason that the instructions did not require it.
Plaintiff further urges that inasmuch as the instruction required the jury to find "the existence of said hole, if you find it did exist, constituted negligence on the part of defendant", and the jury did so find, such finding was tantamount to finding defendant had such knowledge, and obviated the necessity of a specific finding to that effect, citing Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 923, 18 S.W.2d 408, 418; Kamer v. Missouri-K. & T. R. Co., 326 Mo. 792, 805, 32 S.W.2d 1075, 1082.
We have carefully read those cases and the cases cited therein. Space does not permit in extended discussion of them or the theory on which each was decided. Suffice it to say that in some of them the facts hypothesized in the submission instructions reflected the long existence of the defect, such as old, worn floors, etc. Others of this line of cases arose out of an early case which held a petition alleging that defendant negligently permitted a defect to exist was tantamount to pleading knowledge. See Hall v. Missouri Pacific Ry. Co., 74 Mo. 298, 302; Johnson v. Missouri Pacific Ry. Co., 96 Mo. 340, 345, 9 S.W. 790. To the same effect was Midway National Bank & Trust Co. v. Davis, 288 Mo. 563, 575, 233 S.W. 406, 409, but in that case the submission instruction did require a finding of knowledge. Then, it seems, later cases, basing the conclusion therein stated upon the cases holding an allegation of negligence in a petition was sufficient to embrace a charge of knowledge, held an instruction requiring a finding that defendant negligently permitted the defect to exist was the equivalent of hypothesizing a finding of knowledge. Morton v. Hiram Lloyd Bldg. & Const. Co., 280 Mo. 360, 271 S.W. 831; Peters v. Hooven & Allison Co., Mo.App., 281 S.W. 71. While the word "negligently", when used in a pleading to describe a defect in a defendant's premises, has a well known legal meaning to lawyers and courts, and may (we do not decide) amount to an allegation of knowledge on the part of defendant of such a defect, yet who can say that it has that meaning to a lay juror? We well may doubt it does.
It is the law that where the defect is of such a nature that the finding of its existence carries with it the clear inference of knowledge of defendant of its prior existence, an instruction omitting such a finding cannot be said to be prejudicially erroneous. Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 1116-1118, 212 S.W.2d 420, 424-425. But, as stated, no such inference arises in this case. The hole here involved could easily and quickly be made by any number of agencies other than that of defendant's workmen.
In commenting on the rule announced in the cases cited by defendant, we said in the Schonlau case, supra, 212 S.W.2d loc. cit. 425: "Defendant urges that we should reexamine that doctrine. Perhaps, if the circumstances of this case were otherwise, it would be well to do so, and, in the future, to limit its application only to those instances in which we are satisfied the jury, in making all the findings required by an instruction in order to reach the requested verdict, could not do so unless it also found defendant had sufficient knowledge of the unsafe condition complained of."
We think the facts of this case bring it squarely within the comment quoted from the Schonlau case, supra; and that the verdict directing instructions given in behalf of plaintiff should have hypothesized a finding that the hole was left by defendant's workmen on the day prior to plaintiff's fall, that testimony being the only evidence upon which plaintiff predicates knowledge on the part of defendant.
Plaintiff finally insists that even if the omission of a finding of knowledge was error, yet it was cured by defendant's given instruction No. 4, requiring as a prerequisite of its liability that "defendant had knowledge" of the hole, citing
*544 Higgins v. Terminal R. R. Ass'n, Mo.Sup., 241 S.W.2d 380, 387. That case and the case of McDonald v. Kansas City Gas Company, 332 Mo. 356, 364, 59 S.W.2d 37, 40, cited therein, state the true rule. The Mc-Donald case concisely states it, 59 S.W.2d loc. cit. 40: "It is, of course, true * * * that an instruction, purporting to cover the whole case and authorize a verdict, is erroneous if it leaves out any facts necessary to be found before the plaintiff is entitled to recover, and that, where an instruction does leave out such an essential fact, the error is not cured by an instruction for defendant requiring a finding of such a fact before recovery can be had against it." And further: "* * * if the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite."
In this case we have held the mere requirement of a finding that the existence of the hole was negligence was not the equivalent of a required finding of knowledge. The instructions omitted such a finding and were therefore prejudicially erroneous. Higgins v. Terminal R. R. Ass'n, supra; McDonald v. Kansas City Gas Co., supra; cases collected in West's Mo. Digest, Trial, 296(1) c, Vol. 27, p. 910, et seq.
The cause is reversed and remanded. All concur.