**YOUNG v. NEW YORK, N. H. & H. R. CO.**

**No. 97.**

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1935.

John M. Gibbons, of New York City (E. R. Brumley, of New York City, of counsel), for appellant.

Thomas J. O'Neill, of New York City (Thomas J. O'Neill and Charles R. Mullin, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee, a locomotive fireman, employed by the appellant, had been engaged in interstate commerce, a run from New London, Conn., by way of New Haven, Conn., to Springfield, Mass. He had the Springfield run, as he called this job, for two weeks immediately preceding June 6, 1933, and it was made on Tuesday, Thursday, and Saturday. Before midnight on June 5th, he left his home and went to the Cedar Hill enginehouse, about 3½ miles from New Haven, to look at the spare board in order to see whether he had been displaced from this run. He then left his street clothes at the inspection pit and obtained his working outfit of overalls, goggles, and timetables. He then rode a light engine from Cedar Hill to New Haven, and at about 1:30 a. m. deadheaded in a coach of a passenger train to New London, 50 miles away. Then he took an engine and caboose to Midway, 56 miles east of New Haven. At Midway the engineer signed on for the engine crew and appellee's pay started. With the engineer he ran his engine light from Midway to New London, pulled a train to New Haven, ran light to Cedar Hill, obtained his street clothes, and ran light in another engine to New Haven and pulled a train to Springfield, Mass. There he rested three hours, washed, and changed his clothes, after which he put on his working clothes and pulled the train to New Haven, took his engine light to Cedar Hill and back, leaving his street clothes at Cedar Hill, and pulled a train to New London. They then ran light from New London to Midway, where the engineer signed off. This was the last run on which he worked. He was then free from any active duty and his pay ceased. The Springfield run began and ended at Midway. From there he walked along about a mile on the highway to the Boston Post Road, boarded a public bus on which he paid his fare, rode 5 or 6 miles to the railroad station at New London, and deadheaded on a passenger train from New London for New Haven. At New Haven he boarded a light engine to go to Cedar Hill, and at about 9 o'clock that evening,

while on that engine, he was injured because of a collision between it and another engine. He has recovered damages for these injuries.

The record on this appeal differs little from that before us when the case was here before. Young v. New York, N. H. & H. R. Co., 74 F.(2d) 251. There we reversed a recovery of damages and ordered a new trial because that record showed he was not employed in interstate commerce. The one difference in this record is the appellee's claim that one of the reasons for going to Cedar Hill was to look at the spare board in order to see whether or not he had been displaced from his Springfield run. His other object in going to Cedar Hill for his street clothes, we held, had nothing to do with his employment and did not concern his interstate employment relations with the appellant. On this trial, appellee testified that the chief engine dispatcher told him when any of his jobs ended at New Haven, he was to ride up on a light engine and look over the spare board to see how he stood and leave his working outfit. After this command, he habitually rode light engines from New Haven so that he might look at the spare board and left his clothes there so they might be available when he was off duty. Although he could have gone home by a trolley more quickly and more conveniently, he went to Cedar Hill because of this order. He said he reported at Cedar Hill for the job and at Midway for the engine.

The court below regarded this additional testimony as establishing a continuing duty and not transportation from work and that it was in some way connected with the Springfield run. Appellee was not being transported to his home from his work, and he says he took the engine to Cedar Hill merely because of an order to do so. But he had gone beyond a reasonable requirement of his employment in interstate commerce on the Springfield run. He had ceased working two hours before; his pay ended at Midway when he left his engine and he had walked for about a mile to the highway of the Boston Post Road and boarded a public bus, where he paid his fare and later deadheaded from New London to New Haven. The engine dispatcher's order was in no way connected with the Springfield run. The Springfield run ended 58 miles from the place of the ac-

cident. He had signed off at 6:45 p. m. and the accident happened at 9 p. m. His duty to appellant had ended. Onley v. Lehigh Valley R. Co., 36 F.(2d) 705 (C. C. A. 2).

The alleged duty to report existed regardless of the Springfield run; as he says, he was compelled by order to look up the spare board at the end of any run terminating in New Haven. Moreover, it was issued a year before and he had held the job of this run but two weeks. The ride on the light engine did not facilitate the previous work. Because of this separation from the Springfield run, it is difficult to understand how the order could relate to that run; still that was the question the trial court submitted to the jury and upon which it was found he was engaged in interstate commerce. This ride under the order of the engine dispatcher was separate and distinct from his previous work and did not partake of the character of that work as a whole. Knorr v. Central R. of New Jersey, 268 Pa. 172, 110 A. 797; certiorari denied 254 U. S. 644, 41 S. Ct. 15, 65 L. Ed. 454; Payne v. Industrial Commission, 296 Ill. 223, 129 N. E. 830.

Under all the circumstances disclosed by the record, there was no necessary connection shown between the Springfield run and the return to Cedar Hill. It in no way affected interstate work and therefore had no relation to it. It came into operation upon the completion of that work for a different purpose and under different conditions. Illinois Central R. Co. v. Peery, 242 U. S. 292, 37 S. Ct. 122, 61 L. Ed. 309. The immediate job only is considered material in determining whether it is an interstate task. Wise v. Lehigh Valley R. Co., 43 F.(2d) 692 (C. C. A. 2); Grigsby v. Southern R. Co., 3 F.(2d) 988 (C. C. A. 6). There was no direct command to do a specific interstate act resulting from the alleged order. If the appellee had retained his regular run, he would not have returned to work for two days and there is no evidence that he had been displaced. The spare board would merely tell him he had been displaced, otherwise he would not know about it until he arrived home. Messengers would call him as his name went on the spare board or in an emergency if he lived more than one mile from the engine house; if a spare man was avail-

able at Cedar Hill, appellee could not be called for extra service. If he found his name on the spare board, he was able to make himself available for call; moreover, frequently he went from one job to another without even going on the spare board.

Since the ride to Cedar Hill had no relation to interstate transportation, either past, present, or future, the appellee fails to bring himself within the prescribed provisions of the Federal Employers' Liability Act (Act of April 22, 1908, c. 149, 35 Stat. 65; 45 U.S.C.A. § 51 et seq.).

Judgment reversed.