WALLACE *v*. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

No. 41341          April 25, 1960          120 So. 2d 131

*Ramsey, Ramsey & Bodron,* Vicksburg; *Adams, Long & Adams,* Tupelo, for appellant.

*C. R. Bolton,* Tupelo; *D. W. Houston,* Aberdeen, for appellee.

240

KYLE, J.

The appellant, James O. Wallace, sued the appellee, the St. Louis-San Francisco Railway Company, under the Federal Employees' Liability Act, for damages for personal injuries alleged to have been sustained by the appellant while engaged in the performance of his duties as an employee of the defendant on October 26, 1956.

The plaintiff alleged in his declaration that the defendant on that date was engaged in the furtherance of interstate commerce in the movement of freight by rail from the State of Mississippi to other states; that the plaintiff was employed as a brakeman on the defendant's railroad between Amory, Mississippi, and Memphis, Tennessee, and as such brakeman, was required to use certain paths on the defendant's railroad yards in Memphis, in going to and from his work; that, while plaintiff was using such pathway provided by the defendant in its yards, going to the washroom provided by the defendant to wash up, plaintiff found that the defendant had negligently allowed and permitted several of its freight trains or long strings of cars to remain standing in the railroad tracks in said yards, blocking the crossing and preventing the use by the defendant's employees of the pathway to go to said washroom; that the plaintiff found it necessary to cross over between said cars, and while doing so slipped and fell by reason of the dangerous and hazardous condition aforesaid, and permanently injured his back. The plaintiff alleged that the defendant was negligent in that it failed to exercise reasonable care to

furnish the plaintiff with a safe place to work, which included incidental passage to and from the bathhouse provided for the use of the plaintiff and other employees; that the defendant violated its duty and its own rules of operation in negligently permitting the pathway provided by the defendant across its yards to become and remain blocked for a long period of time by trains or cuts of cars, thus preventing the proper and safe use of said passageway; and that the defendant's negligence in permitting the pathway to become and remain blocked was the proximate cause of the plaintiff's slipping and falling.

The defendant in its answer denied that the plaintiff at the time of his injury was an employee of the defendant or was engaged in the furtherance of interstate commerce in the movement of freight by rail; and the defendant denied the other material allegations of the declaration. The defendant in its answer averred that the plaintiff was off duty and not in the service of the defendant at the time of the alleged accident. The defendant also averred that the plaintiff was guilty of gross negligence in climbing over or crossing through the alleged cut of railroad cars, and in selecting the way of returning from the Yale Hotel to the wash or locker room on the railroad yard, and that the gross negligence of the plaintiff was the direct and proximate cause of the plaintiff's injury.

The plaintiff testified that he lived in Amory, Mississippi, and had been an employee of the St. Louis-San Francisco Railway Company for a period of approximately 20 years. On October 26, 1956, he was holding the position as brakeman on a freight train which ran from Amory to Memphis, Tennessee, a distance of 124 miles. The conductor on the train was J. L. Duval, who also lived at Amory. The train left Amory at 3:00 o'clock A.M. and arrived at the Yale Yards in Memphis about 6½ hours later. The plaintiff and the conductor got off the train and went to the yard office, climbing over

a cut of cars to get to the office. The members of the crew tied up the train and completed the active labor about 9:50 A.M. The plaintiff went immediately to the yard office and registered in the "bum book" or register provided by the defendant, and reported his "tie up time." After the plaintiff had registered on the "bum book" he left the office and went to the Yale Hotel, off the railroad yard on Trezevant Avenue, and registered for a room. There was a cinder path from the yard office to the street leading to the Yale Hotel which was used by the employees. When plaintiff left the yard office to go to the hotel this path was blocked by cuts of cars on three tracks and plaintiff climbed through three cuts of cars to reach the hotel, but this occurred without incident. After registering at the hotel for a room the plaintiff ate breakfast, sat down and read the morning paper, and finally walked outside to see if the cars that were blocking the walkway had been moved. About 12:15 P.M. the plaintiff decided to return to the washroom on the railroad yard to shave and check with the call boy as to when he might be used and also check the bulletin board. He climbed over the cut of cars on the south beyond the main line, on the No. 1 track, and was attempting to cross the cars on the No. 3 track, when he slipped and fell. There was no movement of the cars when the plaintiff slipped and fell. The plaintiff then described in detail his injuries and the hospital and medical treatment which he had undergone as a result of his injuries.

On cross-examination, the plaintiff stated that he and the conductor signed out between 9:30 and 10:00 o'clock, and he had no further duties to perform in connection with the train. His next duties would be when he was called to take another train. The plaintiff stated that, when he signed the register at the yard office, he showed that he would be at the Yale Hotel. He was not supposed to be called back under eight hours. He was "on his own" until the call boy called him back; but he

was supposed to be ready for another assignment on short notice.

J. L. Duval, who testified as a witness for the plaintiff, testified that after the trainmen signed the register at the end of a run they were free to go to their places of lodging, and were subject to no further duties until they were called. According to an agreement between the railroad and the Brotherhood, they would not be called prior to eight hours unless there was an emergency due to a wreck or a washout. After a trainman got off the yard he was ''on his own'', until notified by the call boy to come back to work. He must then have one hour and forty minutes notice. He was supposed to familiarize himself with the circulars and bulletins before the beginning of each trip. The rule required that he do that; but that was usually done just before the train pulled out. Duval stated that a trainman had no occasion for having to look at the bulletin board to see when he was going out, except for his own personal plans. A trainman was not required to go to the caller's office and look at the bulletin board to get his name on the list to be called.

At the close of plaintiff's case the defendant made a motion for a peremptory instruction on the ground that the plaintiff's evidence showed that the plaintiff was off duty at the time of the accident and had left the defendant's premises, and that the defendant was under no duty to furnish him a safe place to work because he had no work to do. The court sustained the motion and directed a verdict for the defendant, and judgment was entered thereon. From that judgment the plaintiff has prosecuted this appeal.

The Federal Employers' Liability Act, as amended by the Act of August 11, 1939, 45 U.S.C.A., Sec. 51 et seq., provides in part as follows:

> ''Every common carrier by railroad while engaging in commerce between any of the several States or Territories * * * shall be liable in damages

to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

It is fundamental that the interpretation of this act is a matter of federal law and that federal decisions are controlling. Urie v. Thompson, 337 U. S. 163, 69 S. Ct. 1018, 93 L. Ed. 1282.

The first point argued by the appellant's attorneys as grounds for reversal of the judgment of the lower court is that the court erred in sustaining the appellee's motion for a directed verdict and refusing to submit to the jury the question of whether or not the plaintiff was employed in interstate commerce at the time of the accident in question.

But we think there was no error in the court's refusal to submit to the jury the question of whether or not the plaintiff was employed in interstate commerce at the time of his injury. There was no dispute as to any material facts; and we agree with the court below that the question for decision is one of law. Quirk v. New York, C. & St. L.R. Co. (C.C.A. 7th, 1951), 189 F. 2d 97. From the testimony of the plaintiff and the plaintiff's witness, J. L. Duval, it seems clear to us that the plaintiff's injury did not arise out of his interstate

activities or the performance of any. duties in further-
ance of interstate commerce. The activity undertaken
by the appellant, when he returned to the railroad yard
at 12:15 P. M., was an activity undertaken for a purely
private purpose. The appellant was performing at that
time no duties as an employee ''in furtherance of inter-
state or foreign commerce. He was engaged in no activi-
ty which, ''in any way directly or closely and substantial-
ly,'' affected such commerce. He was performing no
service for his employer. He was neither going to nor
coming from the job at the time of his injury. He was
neither engaged in rendering actual service to the rail-
road company, nor in doing the things necessarily inci-
dent thereto.

It is no longer doubted that the Employers'
Liability Act extends to and covers not only the actual
work performed in interstate commerce, but those acts
which can be said to be necessarily incident thereto.
Thus, an employee is working in commerce while
going to and from his actual place of work after report-
ing for duty. Lukon v. Pennsylvania R. Co. (C.C.A. 3rd
1942), 131 F. 2d 327. And, the act covers temporary
departures from his line or course of duty, as where a
fireman, after oiling, firing and preparing his engine
for an interstate journey, temporarily left his engine to
go to his nearby boarding house and was struck while
on the railroad premises. North Carolina R. R. Co. v.
Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann.
Cas. 1914C, 159. But, given its most liberal inter-
pretation, the act cannot be extended to cover activities
not necessarily incident or of an integral part of em-
ployment in interstate commerce. It obviously does not
cover activities undertaken by an employee for a pri-
vate purpose and having no causal relationship with his
employment. Young v. New York, N. H. & H. R. Co.
(C.C.A. 2d 1934), 74 F. 2d 251; Young v. New York,
N. H. & H. R. Co. (C.C.A. 2d 1935), 79 F. 2d 844; Sassa-
man v. Pennsylvania R. Co. (C.C.A. 3rd 1944), 144 F.

2d 950; Quirk v. New York C. & St. L.R. Co., supra.

It is argued, however, on behalf of the appellant that, although the nature of the activity in which he was engaged at the time of his injury may have partaken of the character of a personal mission of his own, the activity was of such nature as might properly be deemed to have been incident to his duties in interstate commerce. But that argument is, in our opinion, wholly untenable, and finds no support in the authorities cited by the appellant's attorneys in their brief.

The appellant in this case, as in Young v. New York N. H. & H. R. Co. (C.C.A. 2d 1934), 74 F. 2d 251, had ceased working two hours before the accident occurred, as a result of which he suffered his injury. His pay had ended. He had no further duties to perform until called to brake another train; and he was not supposed to be called again under eight hours, unless there was an emergency, that is to say, a wreck or a washout. The appellant, at the time of his injury, according to his own testimony, was returning to the railroad washroom to shave. As stated by the Court in the Young case, in commenting on the plaintiff's wish to go by Cedar Hill to change his clothes, "Certainly the defendant had no conceivable interest in this * * *." The opinion in the Young case was written by Judge Learned Hand; and in the later case of Mostyn v. Delaware L. & W. R. Co. (C.C.A. 2d 1947), 160 F. 2d 15, which was decided several years after the enactment of the 1939 amendment to the Federal Employers' Liability Act, Judge Hand said: "We hold, as we did in Young v. New York, N. H. & H. R. Co., supra, that any activity undertaken by an employee for a private purpose is certainly not within his employment." See also Young v. New York N. H. & H. R. Co. (C.C.A. 2d 1935), 79 F. 2d 844; Quirk v. New York, C. & St. L. R. Co., supra; Atchison T. & S.F.R. Co. v. Wottle (C.C.A. 10, 1952), 193 F. 2d 628.

This case is entirely unlike the case of Atlantic Coast Line Railroad Co. v. Craven (C.C.A. 4th 1950), 185 F.

2d 176, cited in the appellant's brief, in which the brakeman, having been led to believe that he was required to report to his conductor as soon as possible after putting the engine away at the completion of an interstate trip, left the railroad yard in an attempt to make such report and was injured while attempting to return to the railroad washroom. This case is also entirely unlike the cases of Atlantic Coast Line R. R. Co. v. Meeks, 1947, 30 Tenn. App. 520, 208 S.W. 2d 355; Mostyn v. Delaware L. & W. R. Co. (C.C.A. 2d 1947), 160 F. 2d 15; and Casso v. Pennsylvania R. Co. (C.C.A. 3rd 1955), 219 F. 2d 303, in which the injured employees were section hands or track workers housed in shanties or bunk cars furnished by the employers and subject to call when not actually in service.

A summary of the decisional law on the points presented for consideration by us on this appeal is stated by the textwriter in 35 Am. Jur., 861, Master and Servant, par. 445, as follows: "An employee whose regular service is a part of interstate commerce is within the protection of the Federal Employers' Liability Act while traveling on the company's property to begin his work, while awaiting the actual work time to begin after reaching the place to which he has been assigned, and while leaving the company's property on his way home, after his interstate work is completed. Also, if the work in which the employee is engaged is interstate commerce, he is protected while going from one job to another. In any case, however, the work in which the employee was to engage must be shown to be interstate commerce; there can be no recovery if the employee was using the yards or tracks for purposes of his own, unless such use is so incidental to his employment that it can be regarded as a part thereof."

We think it is clear from the testimony of the appellant and his witness, J. L. Duval, that the appellant in this case was not acting within the scope of his employment at the time he received his injuries, and

that the appellant's use of the railroad yards and tracks at that time was not so incidental to his employment that it can be regarded as a part thereof. We must therefore hold that the appellant was not employed in interstate commerce at that time, and that the appellant did not have a right of action under the Federal Employers' Liability Act at the time the suit was filed. Cf. Young v. New York, N.H. & H.R. Co. (C.C.A. 2d 1934), 74 F. 2d 251; Young v. New York, N.H. & H.R. Co. (C.C.A. 2d 1935), 79 F. 2d 844; Bishop v. DeLano (C.C.A. 7th), 265 F. 263, certiorari denied, 254 U. S. 632, 41 S. Ct. 7, 65 L. Ed 448; Sassaman v. Pennsylvania R. Co., supra.

The judgment of the lower court is therefore affirmed.

Affirmed.

All Justices concur except *Roberds, J.*, who took no part.