Glenn **ELLIOTT**, Respondent,

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a corporation, Appellant.**

No. 55772.

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1972.

———◆———

Daniel D. Sawyer, Raymond, West, Mason & Shy, Kansas City for respondent.

Coburn, Croft, Shepherd & Herzog, John C. Shepherd, John R. Musgrave, St. Louis, for appellant.

MORGAN, Presiding Judge.

Under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq., plaintiff initiated this action for damages resulting from personal injuries suffered by him on April 12, 1959. Such injuries, among others, included the loss of his left leg. The verdict and judgment were for plaintiff in the amount of $100,000, and defendant has appealed. We affirm.

Plaintiff had been employed by defendant for approximately sixteen years as a locomotive fireman. His regular run, on interstate trains, was from Illmo, Missouri, to the Valley Junction railroad yard near East St. Louis, Illinois, and return to his home station in Illmo. On the day in question, the train to which he was assigned left Illmo at 7:30 A.M. and arrived in Valley Junction between 12:00 and 12:15 P.M. The crew was subject to call for the return trip later that day, and, in fact, the members thereof were delivered a formal message on arrival that they probably would be called to leave at 2:30 P.M. After stopping at the yard office, the crew got on the engine and rode to the roundhouse and registered in at about 12:45 P.

M. Each member of the crew designated where he would be to receive the call for the return trip. Plaintiff specified his regular stopping place at the Cotton Belt Hotel which was referred to as the "Beanery." It was located within the yard adjacent to the terminal tracks and was owned by the defendant but leased for management. On the other side of the tracks was Holder's Place, generally referred to as the "Knuckle" and which served as a rooming house where railroad employees generally prepared their own meals. By road it was about two and one-half blocks from the Beanery and approximately half that distance across the tracks. There was a well defined path across the tracks between the two locations. On this day, the engineer for the crew invited plaintiff to come to the Knuckle and have lunch with him; and plaintiff, after registering at the Beanery and leaving his bags, walked along the path to the Knuckle. Upon arrival he was offered and accepted one drink of whisky from a half-pint bottle. For some thirty minutes he visited with other employees and assisted one in replacing spark plugs in his automobile. The crew ahead of plaintiff's was called at 1:30 P.M., and when it appeared that lunch was not being prepared he decided he had better get back to the Beanery to receive his call, pick up his bag and try to get some lunch. After he observed that the route he had used going to the Knuckle was blocked by a train of the Alton & Southern Railroad, the owner of the automobile he had helped and the engineer offered to take him back to the Beanery. They traveled south parallel to the yard limits and turned east and crossed over tracks belonging to the Terminal Railroad. As they then approached the track that ran immediately in front of the Beanery, they found it to be blocked by a train of the Alton & Southern. It was approximately three-fourths of a mile in length. Plaintiff got out of the car and the driver and the engineer for the crew returned to the Knuckle. The engineer stated the train was moving when they

left, but plaintiff testified that it was stopped during all times of interest here. The crossing itself was on property of defendant. After waiting four or five minutes, plaintiff walked to the right or south looking for the end of the train but could not see it (the parties agree and the exhibits show that the track in question extended in circular manner practically around the Beanery); he then turned around and walked back past the crossing where he had first waited and continued walking to the north to see if he could see the other end of the train—which he could not. Approximately ten minutes elapsed while he was walking. After arriving at a point on property and tracks owned by the Alton & Southern (near the path to the Knuckle) plaintiff decided to cross over the track between two of the cars of the train. He stepped up on the stirrup between the cars and had both feet on the drawbar when the train suddenly moved and he lost his footing. He fell and was dragged under the train for a couple of car lengths and his left leg was run over. This occurred at about 2:15 P.M. Plaintiff's evidence, more specifically, included the following: that trains sometime blocked the crossing for as long as an hour; that the train had not moved and he did not know when it would; that he expected a call any minute and if he was not at the Beanery to accept his call, he would be subject to severe discipline; that it would only take three or four seconds to get through the train; that it was the usual custom for trainmen (including officials) to cut or climb through trains blocking the crossing in that area; that he did not see anyone in the area; that he listened and heard no bell, whistle, sound of air brakes or slack-run; and, that he was aware of the custom of train crews to give a warning signal by bell or whistle before starting up.

Further testimony, offered on behalf of plaintiff, revealed that tracks in the area were used, generally, by several different railroad companies under inter-change agreements; that the track near the Beanery was that customarily used by the Alton & Southern to deliver railroad cars to defendant; and that no effort was ever made to avoid blocking the crossing in question by cutting the train. Additionally, evidence was offered as to the existence of three foot bridges (overpasses) and one underpass belonging to different railroads for the use of traffic and pedestrians in other areas of the yard. Such other facts as appear relevant will be noted while considering the points now submitted on appeal.

Plaintiff's verdict-directing instruction (No. 3), in part, authorized the jury to return a verdict for him if it found that ". . . (a) defendant failed to provide reasonably safe conditions for work, or (b) defendant, acting by and through its agent, Alton & Southern Railroad, caused the train to be moved without warning . . ."

Defendant not only argues that plaintiff failed to make a submissible case under either theory, but also, that his case must fail for the specific reason plaintiff was not acting in the course and scope of his employment at the time of the occurrence. In this connection, we will consider the latter argument first, and while so doing we necessarily consider the evidence from the standpoint most favorable to the plaintiff. Wiser v. Missouri Pacific Railroad Company, Mo., 301 S.W.2d 37, 38. Consideration of the same must be in light of the law which was summarized clearly in Louisville & N. R. Co. v. Botts, 173 F.2d 164 (8th Cir.) at l. c. 167: "[2, 3] The opinions of the Supreme Court have declared that it is 'the clear Congressional intent that, to the maximum extent proper, questions in actions arising under the Act should be left to the jury,' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 451, footnote 30, 87 L.Ed. 610, 143 A.L.R. 967; that such cases may not be taken from the jury merely because the

question of liability is 'close or doubtful,' Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444; that the jury has the right to make 'all reasonably possible inferences' from such probative facts in the evidence as it chooses to accept, and 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences,' Tennant v. Peoria & P. U. Ry. Co., 321 U. S. 29, 32–35, 64 S.Ct. 409, 411, 412, 88 L. Ed. 520; that in any choice between possible inference 'a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference,' but 'Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear,' Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916; and that the assumption that, on an issue of liability, 'juries will invariably decide * * * against railroads' is 'contrary to fact,' and courts may not act on the theory that 'juries will fall short of a fair performance of their constitutional function,' but they must assume that a jury 'finds facts only because they are proved,' Wilkerson v. McCarthy, [336 U.S. 53,] 69 S.Ct. 413, 417, 418 [, 93 L.Ed. 497]."

The law as thus noted has been recognized and quoted by this court in Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S. W.2d 418, 422; Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516, 520; and, Wiser v. Missouri Pacific Railroad Company, supra, 301 S.W.2d at page 41. Such governing standard was concisely stated more recently by the Supreme Court of the United States in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, at 352 U.S. 506, at 77 S.Ct. 448–449, to wit: " . . . the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negli-

gence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence."

As to whether or not plaintiff was at the time he suffered his injuries acting within the course and scope of his employment, defendant argues that: " . . . it is clear that at the time of the accident resulting in plaintiff's injuries, he was not engaged in his employment with defendant. By the plaintiff's own testimony, he was not on the defendant's payroll; he had not been called to duty; he was not on his way to work or leaving work; he was free to go where he pleased; he had not been ordered to be anywhere by any employee of the defendant; and at the time of the accident, he was returning from an activity undertaken by him for a private purpose having no causal relationship with his employment." Based on the premise that all of such declarations are true, defendant relies primarily on Wallace v. St. Louis-San Francisco Railway Company, 239 Miss. 237, 120 So.2d 131 (1960), cert. den. 364 U.S. 862, 81 S.Ct. 105, 5 L.Ed.2d 86, and, Quirk v. New York, C. & St. L. R. Co., 189 F.2d 97 (7th Cir., 1951), cert. den. 342 U.S. 871, 72 S.Ct. 105, 96 L.Ed. 655; Atchison, T. & S. F. R. Co. v. Wottle, 193 F.2d 628 (10th Cir., 1952), cert. dismissed

343 U.S. 963, 72 S.Ct. 1063, 96 L.Ed. 1360. In Wallace, the plaintiff was denied recovery for injuries suffered in a manner somewhat similar to that of plaintiff here. The court found that at the time of injury plaintiff was "on his own" while waiting for the return trip. The holding is not specifically controlling, however, because of the different factual situation which prevailed at the time of injury. In Wallace, plaintiff had been in and around the yards for some two hours prior to being injured and testified he was at the time going to shave; and further, as the court noted, "he was not supposed to be called again under eight hours." In Quirk, plaintiff was found not to be engaged in his employment when he had left his place of work, and, although scheduled to be at work the next morning, was killed in an automobile accident on the way home. In Wottle, plaintiff had completed his work day and could stay in the bunkhouse provided or go home. He decided to go to a nearby town to secure groceries and return to the bunkhouse, but during the trip his automobile was struck by a train and he was killed. Recovery was denied on the grounds plaintiff was engaged in an activity for a "private purpose."

In response, plaintiff relies on an opinion of this court in Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, which was a case under F. E. L. A., wherein the court said, l. c. 523: "[6] An employee may be acting within the scope of his employment even before his normal duties are begun or the place of work is reached. For example, a locomotive fireman travelling as was customary along a path on the company's property to assume his duties was held to be an employee within the meaning of the Act. Philadelphia, B. & W. R. Co. v. Tucker, 35 App.D.C. 123, L.R.A.1915C, 39; Id., 220 U.S. 608, 31 S.Ct. 725, 55 L.Ed. 607. See also Erie R. Co. v. Winfield, 244 U.S. 170 [, 37 S.Ct. 556, 61 L.Ed. 1057]; Hunt v. Chicago, B. & Q. R. Co., 303 Mo. 107, 259 S.W. 481; Brock v. Mobile & O. R. Co., 330 Mo. 918, 51 S.W.2d 100;

Hughes v. Mississippi River & B. T. Ry., 309 Mo. 560, 274 S.W. 703; Smith v. Thompson, 349 Mo. 396, 161 S.W.2d 232, second appeal Mo.Sup., 182 S.W.2d 63; Atlantic Coast Line R. Co. v. Williams, 5 Cir., 284 F. 262; Glover v. Union Pac. R. Co., D.C., 21 F.Supp. 618; Northwestern Pac. R. Co. v. Industrial Acc. Comm., 73 Cal.App.2d 367, 166 P.2d 334, 335, and cases cited. Consult also Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Lumber Mut. Cas. Ins. Co. of New York v. Stukes, 4 Cir., 164 F.2d 571."

By reply brief, defendant contends the Griffith case "did not even concern scope of employment." However, the argument is unfounded, for as the court noted at l. c. 523, immediately prior to the quoted portion: "The essence of Alton's contention is that Griffith was not acting within the scope of his employment . . . ." Other cases cited by plaintiff to sustain his argument that "course of employment" within the Federal Employers' Liability Act includes passage across the employer's premises to and from the place of work, where such movement is a necessary incident of the assigned work, include: Morris v. Pennsylvania R. Co. (2nd Cir.), 187 F.2d 837; Virginian Ry. Co. v. Early (4th Cir.), 130 F.2d 548; Kooker v. Pittsburgh & Lake Erie R. Co. (6th Cir.), 258 F.2d 876; Hatfield v. Thompson, Mo., 252 S.W.2d 534; and, Chicago, M. St. P. & P. R. Co. v. Kane (9th Cir.), 33 F.2d 866. As to defendant's argument that plaintiff was not being paid at the moment of injury, plaintiff quotes from the opinion of this court in Brock v. Chicago, R. I. & P. Ry. Co., 305 Mo. 502, 266 S.W. 691, l. c. 697: "The fact that the plaintiff was paid by the hour for the hours he worked, and received no pay for the noon hour, does not of itself serve to sever wholly the relation during the time he was occupied in preparing for the meal to be taken at the place and in the period contemplated and required under the arrangements which the employer provided. So long as, and to the extent that,

his movements at this time were confined to such acts as were a part of the routine prescribed or pursued under the instructions of his superior, the relation incidental to his employment was not broken. * * * Upon this question, the particular unit by which the employee's compensation is measured, the hour, the number of miles traveled, the day or the week is not of controlling force. In either, exceptions arising out of the arrival at or departure from the place of employment and cessations necessary or incidental to the work must be recognized."

■ From all of which, one question remains—was plaintiff's activity at the time of injury for a private purpose? We do not believe that it was. Plaintiff, when he arrived in the yards, was advised by defendant, his employer, to be available for call at 2:30 P.M. and to register where he would be at that particular time. The place he designated was one apparently encouraged for use by the employer. The injury happened at 2:15 P.M. while plaintiff was on his way to comply with the original order and be available to assume his duties. Failure to be at the designated place at the designated time would have been a dereliction of duty and have subjected plaintiff to certain penalties. We are convinced that at the time of injury plaintiff was making such necessary and contemplated preparations for work that he had the legal status of an employee engaged in interstate commerce and was thus covered by the act. Erie Railroad Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057.

■ During argument, in connection with the first point just considered, defendant also sought to avoid liability for the reason plaintiff, as noted, had walked to the north of the crossing such a distance that his injuries were suffered at a place where the Alton & Southern owned the track. Although not designated as a point on appeal, we have considered the same and find it to be without merit. As said in the Kooker case, supra, 258 F.2d at 1. c. 878: ". . . the duty of an employer to provide his servants with a safe place to work is not so circumscribed and there are many federal cases which hold that the obligation of an employer may extend beyond its premises and to property which third persons have a primary obligation to maintain. Chicago Great Western Ry. Co. v. Casura, 8 Cir., 234 F.2d 441; Chesapeake & Ohio Ry. Co. v. Thomas, 4 Cir., 198 F. 2d 783; Atlantic Coastline R. Co. v. Robertson, 4 Cir., 214 F.2d 746; Beattie v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 217 F.2d 863; Terminal R. Association of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 1 A.L.R.2d 290. These cases cite and are based upon Ellis v. Union Pacific R. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572." See also Almendarez v. Atchison, Topeka & Santa Fe Railway Co., 5th Cir. (1970), 426 F.2d 1095.

■■ Next, we consider whether or not plaintiff made a submissible case on the issue of defendant's failure "to provide reasonably safe conditions for work." While contending that he did not, defendant relies heavily on the case of Atlantic Coast Line Railroad Company v. Craven (4th Cir. 1950), 185 F.2d 176, cert. den. 340 U.S. 952, 71 S.Ct. 571, 95 L.Ed. 686. The facts are quite similar to those of the instant case in so far as what the plaintiff was doing at the time of his injury. Among other acts of alleged negligence was that defendant had failed to provide a bridge or tunnel at the crossing. The court there declared, 1. c. 179, while denying recovery, that the ". . . remedy would have been all out of proportion to the risk involved." In response, plaintiff submits that the cases are factually distinguishable. One fact being that in Craven the plaintiff was attempting to pass through or around a moving train; that the evidence reflected the crossing was blocked only from 2 to 15 minutes at a time whereas here it was several times a day for five minutes to an hour; that in Craven, as shown by the

opinion at l. c. 179: "It is not argued that the train in question was negligently operated," while in the instant case such an allegation was made. In addition, plaintiff suggests that the Craven case was decided more than six years prior to the liberalizing movement in FELA law as reflected in Rogers (1957), supra. Our attention is called to a later case, Atlantic Coast Line R. Co. v. Floyd (4th Cir.), 227 F.2d 820, considered by the same court, even before Rogers, wherein such trends were obviously reflected. For these reasons, plaintiff challenges the validity of relying on the Craven case. In connection with this point, as well as the others submitted, the parties cite and refer to many cases, and we cannot in this opinion compare or distinguish all of them. The problem yet remains—did the defendant fail to provide plaintiff reasonably safe conditions for work? The jury found that it did, and it was not limited to basing its finding of negligence on the absence of a bridge or tunnel. "Although any number of causes may contribute to an injury, so long as one may be attributable to the railroad's negligence, a proper foundation for liability exists." Harris v. Chesapeake & Ohio Railway Company (7th Cir.) 1966, 358 F.2d 11, 12. Whether or not we might believe that another conclusion was more reasonable is unimportant, for "Only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916. The undisputed facts are that defendant provided on the yard a hotel—the Beanery—for trainmen, which plaintiff and others patronized; that the Knuckle was comparably used; that defendant's rules called for employees to be available at a designated place at a designated time to avoid certain penalties; that railroad traffic was at the point in question regularly allowed to block efforts of an employee to comply with the dictates of such rules; and that, as defendant contends was legally proper, the trains which made plaintiff's performance of his duties and obligations such a hazardous task were moved without any type of warning. With liability being premised on failure of the defendant to remove all dangers reasonably to be anticipated as an incident of plaintiff's employment, reasonable men might conclude that defendant failed to take precautions commensurate with the dangerous condition which existed. Since we can not as a matter of law rule otherwise, the decision of the jury is controlling on the issue.

 The other submitted issue involved the alleged negligence of defendant in causing the particular train in question to be moved "without [a] warning." Prior to considering this more specific allegation of negligence on behalf of defendant, it should be recognized that evidence thereon was also properly before the jury while it was resolving the more generalized allegation that defendant had not been provided a safe place to work. For instance, as this court said in Francis v. Terminal R. Ass'n of St. Louis, 354 Mo. 1232, 193 S.W.2d 909, at l. c. 913: "In connection with the question of a safe place in which to work the defendant contends in this court that under defendant's rules no duty devolved upon the enginemen to warn plaintiff of the oncoming engine. If that be true, then certainly that was just another element adding to the dangerous condition." Defendant concedes that the train in question was moved without any signal or warning, but contends that: "In the course of a switching operation, absent a rule or custom requiring it, no signal as to movements of cars need be given when there is nothing to show that those in charge of the operation know or have reason to believe that others are in a position whereby they will be endangered by such movement." Authorities cited include: Sumney v. Southern Railway Company (4th Cir. 1937), 89 F.2d 437; Trust Co. of Chicago v. Erie R. Co. (7th Cir. 1948), 165 F.2d 806; and, Chesapeake & O. Ry. Co. v. Mihas (1929), 280 U.S. 102, 50 S.Ct. 42, 74

L.Ed. 207. Reliance is also placed on the opinion of this court in Ottley v. St. Louis-San Franciso Railway Company, 360 Mo. 1189, 232 S.W.2d 966, wherein the holding was similar to that of the just quoted portion of defendant's argument. The plaintiff there was a car inspector. Contrary thereto, plaintiff submits that the train in question was not engaged in a "switching movement" at the time of injury but that it was a "train movement." Such a classification is bottomed on the holding in United States v. Thompson (8th Cir.), 252 F.2d 6, wherein it was said, l. c. 9: "It is our understanding that when cars are assembled at one point in a railroad terminal and moved intact a considerable distance for delivery at another point in the same terminal, the movement is not a switching operation but is, as a matter of law, a train movement . . . ." Compare Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757. Although the Thompson case involved the "Safety Appliance" portion of the act, we can see no valid distinction for having a different classification in penalty cases from those involving the liability sections. Nevertheless, even if the activity here properly could be called a switching movement, it is agreed that there is a duty to warn when those in charge of the movement know, or have reason to believe, that others are in a position whereby they will be endangered by such movement. With there being evidence that employees and officials did cross over trains which blocked this track regularly for extended periods of time, under the existing law, we do not believe that we could set aside a conclusion by the jury that defendant "had reason to believe" a warning was called for. In addition, plaintiff argues that a "custom" was shown which created a duty to warn. It is true that plaintiff also testified that it was defendant's rule to sound a warning before moving a train and he relied thereon. By an answer to one interrogatory, defendant agreed as to the rule but, as noted, contends a train movement was not involved. Whether or not Alton & Southern had such a rule is of no bearing. American Nat. Bank & Trust Co. v. Pennsylvania R. Co., 35 Ill.2d 145, 219 N. E.2d 529; Griffith v. Gardner, Mo., supra. This court held in Brock v. Mobile & Ohio R. Co., 330 Mo. 918, 51 S.W.2d 100, that it was negligence to fail to warn where customarily a warning had been given.

 Defendant also contends the court abused its discretion in admitting evidence of other bridges and a tunnel in the area. It is argued that the evidence was not sufficient to prove a custom which called for a showing of a definite, uniform and known practice under definite and uniform circumstances. Plaintiff contends such evidence was admissible to present a jury issue whether a reasonably prudent master would have taken such a precaution for its employees. From our review of the record, we do not believe such evidence created a false "standard" with which the jury could have found defendant failed to comply. As we said in Gatzke v. Terminal Railroad Ass'n of St. Louis, Mo., 321 S. W.2d 462 at 466: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." See also Cleghorn v. Terminal Railroad Ass'n of St. Louis, Mo., 289 S.W.2d 13, 18. Under the Cleghorn case, the evidence in question could not be considered as prejudicial, whether properly admitted or not, for the reason it is "common knowledge" that overpasses and underpasses are constructed in connection with railroad tracks. The instant case must stand or fall on its own facts. "The exercise of due care, . . . . ., requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate precautions." Cleghorn, supra, l. c. 18. It was not error for the

**16**

plaintiff to show one practicable method of making the crossing reasonably safe, although there might have been other remedies obvious to the jury.

 Lastly, defendant alleges that the court erred in giving Instruction No. 3 for the reason it did not require a specific finding by the jury that plaintiff at the time of injury was acting within the scope of his employment. Plaintiff submits that the point is not preserved for review because in its motion for new trial defendant asserted only "an alleged insufficiency of the evidence to support the instruction and no complaint was made of form or substance." After noting that the instruction used is that required by MAI No. 24.01, we do not believe it necessary to further extend this opinion by a detailed consideration of whether or not the wording used in the motion preserved the point made on appeal. Since we have found, under the undisputed facts, that plaintiff was at the time acting within the scope of his employment as a matter of law, error can not be predicated on a failure to allow the jury to resolve the same issue.

Defendant sought to establish that plaintiff was contributorily negligent, and that issue was submitted to the jury by Instruction No. 4. Since the same did not bar a recovery, even if found by the jury, there could be no advantage in detailing evidence in that connection. This is true for two more specific reasons: (1) there were sufficient probative facts for the jury to find negligence on the part of defendant, and (2) the record does not reflect that contributory negligence of plaintiff, if any, was the sole proximate cause of the injury suffered.

Finding no reversible error, the judgment is affirmed.

HENLEY and DONNELLY, JJ., and PRITCHARD, Special Judge, concur.